*1173 OPINION.
Goodeich :
In view of the interpretative discussions as to the legislative history, and prohibitive purposes of section 220 of the Acts of 1924 and 1926, and section 104 of the Revenue Act of 1928 [3] (the material provisions of which are almost identical) contained in prior decisions of cases arising under these provisions,'[4] it is unnecessary to here attempt any further observations concerning the statute. Certainly, this case demands none for, as submitted, it requires us only to answer these very definite questions of fact: Was this company organized, or was it used for the purpose of preventing the imposition of surtaxes on its stockholders; did it accumulate, rather than distribute its earnings, so that surtaxes might be avoided ? There is, of course, considerable argument as to what may be the “ reasonable needs ” of the corporate petitioner’s business, and whether its accumulations exceeded that measure but, after all, that line of inquiry leads but to a rebuttable presumption granted by the statute as an aid to enforcement. The extensive record in this case would not justify the resting of it upon a presumption; the deeper question must be answered.
Respondent makes a strong case supporting his action in laying a tax under these sections, and maintaining his position under petitioner’s attack. But it is a case based upon circumstantial evidence. He points out that in the beginning, Cecil deMille, his wife and their associates, had little with which to do business beyond the intelligence, professional skill, and reputation of deMille as a director of motion pictures. He argues that the initial earnings *1174 of the partnership which preceded this company, and since then, the greater part of the income both of the partnership and the . corporation were garnered because of Cecil’s personal earning power, based upon his recognized talents as a director.
Respondent points out further that the creation of the partnership distributed (so far as taxability was concerned) amongst several people the salary theretófore earned by, and taxable alone to deMille, and that Cecil’s taxes thus were reduced. (Of course, the partners weie taxed on their distributable shares of the firm’s earnings.) The formation of the partnership, he argues, marked the first step in carrying out a conceived avoidance scheme.
Continuing, he calls attention to the fact that the corporation, this petitioner, was organized, took over the assets and the business of- the partnership, not long after the Revenue Act of 1921 had freed corporate incomes from the war-time levies laid upon them, so that the share of profits on pictures accruing to this group under the contracts could be received by a corporation subject to a lower tax than that levied upon individual recipients. That result, he argues, proves that the company was formed for purposes of avoidance. And as proof that it was availed of for that purpose thereafter, respondent deems sufficient the fact that a large part of the company’s earnings were from year to year accumulated as investments in securities, in real estate, and in numerous varied enterprises, many of which had little or no relation to the motion picture business.
There is weight to respondent’s argument. The facts are that substantial earnings which, at least in the beginning, arose mainly from the personal talents and efforts of one man, were turned in to a firm; that later, a corporation was formed, and those earnings, together with assets previously bought with prior accumulations of them, were transferred from the firm to the company; that this corporation, although it distributed substantial amounts as salaries, along with some dividends, withheld from distribution to its shareholders, a large part of its income. And, of course, the shareholders have not paid .the surtaxes for which they would have been liable had they received as dividends the amounts so' withheld.
But the. taxes under these statutory provisions are not imposed because of effects; avoidance per se is not prohibited. It is the purpose, the intention motivating a course of conduct, which is made controlling by the very words of the statute. Unless the purpose was to prevent the imposition of surtaxes, the tax may not be imposed. Admittedly, circumstances may evidence a purpose, and circumstances such as we find here, without a further showing, justify the finding of the prohibited purpose at which these provisions are aimed.
*1175 However, there is a further showing in this case — one which cannot be disregarded, and which overweighs the evidence of purpose presented by the circumstances. DeMille, McCarthy, and, Fisher, all connected with the first organization, the partnership, all having to do with the formation of the corporation, all serving thereafter as directors of the company (McCarthy until 1924; Fisher until 1926) testified. Under oath, each flatly denied that the company was formed for the purpose of preventing the imposition of sur-, tax upon its shareholders; or that it was availed of, or accumulated its profits for that purpose. They denied that the matter of surtax avoidance by the shareholders was ever discussed, or that the possibility of such avoidance was ever a consideration in determining the disposition of the company’s earnings. These denials remain unshaken by cross-examination. Of course, such denials are not entirely controlling. Perhaps they are to be expected, for without them there would be no controversy.
But the proof here goes well beyond mere denial of prohibited intent. It shows affirmatively a plan necessitating the accumulation of earnings and the end to which they might ultimately be used. The witnesses testified fully as to the purpose for which the company was formed — to create an organization for the independent production of pictures — and as to their purpose in accumulating, rather than distributing its earnings, and building a surplus — to enable that organization to finance its own productions.
There is extensive evidence concerning the needs of the business, the necessity for a large surplus to meet the cost of its own productions in event of cancellation of the company’s contracts, and concerning the friction and disputes which' pointed to imminent cancellation, against which the only protection was that independence assured by an ample reserve. The testimony concerning the purpose for which the corporation was formed and the purpose for which its surplus was accumulated is corroborated by the minutes of the meetings of the directors of the company — the contemporaneous record reflecting the company’s activities and the reasons, therefor.
We are not ready to disregard this testimony or to say that the recorded thoughts of the company’s guiding heads, the writing of which was begun more than a decade ago, was artfully drawn for self-service against the future day of trial. Those denials of wrongful intent, those declarations of a purpose other than the avoidance of taxes in the building of a surplus, we believe, as against the evidence of circumstance from which might be drawn inferences to opposite effect.
Nor are we ready to say that the plans for the company and the purpose for which its surplus was accumulated were too far-fetched *1176 to be within the limits of reasonable business ambition. From the record it is apparent that the company, when producing under contracts for others, was beset with controversies and difficulties and frequently, if not constantly, endangered by the possibility of cancellation of its contracts. The desire and determination of the stockholders to advance the activities of their company from those of a producer under contracts, to those of an independent producer, financed sufficiently to insure the making and marketing of its own pictures, seem not unreasonable.
Whether the money necessary to the realization of that determination is raised upon loans, by sale of stock, or by conservation of earnings seems immaterial, so long as the last plan does not result in an accumulation of profits unreasonable to the needs of the business. In view of the evidence as to the costs of picture production, and as to the marketing hazards of the business which involve the risk that the talent and taste of the ju’oducer may not satisfy the public fancy, we cannot say that the surplus accumulated by this corporate petitioner was beyond that necessary to its ends. Consequently, for these reasons, we have made our finding, and hold that respondent erred in imposing upon petitioner the taxes provided by these sections of the statutes.
Because of divergence of facts — and each case involving this issue must bottom on its own facts — the prior decisions cited give little support to respondent’s determination. In some of the cases, the principal shareholders transferred to the corporations substantial amounts of income-producing properties, permitting the corporations thereafter to receive and accumulate those revenues, and thus immediately reducing their individual incomes and the taxes thereon. Not so here. Neither Cecil nor Constance deMille stripped themselves of assets. On the contrary, each owned substantial properties beyond their stock of petitioner, and each individually received the income therefrom.
In other cases, the controlling stockholders enjoyed the profits of the corporations by means of large loans to themselves, which they did not repay. Again, not so here. Constance deMille borrowed nothing from petitioner; Cecil ran a small open account which in 1927 was overpaid, and in addition borrowed on note. His initial indebtedness to the company was discharged by the transfer of real estate. In 1924, the company owed deMille a net amount of $40,000. In 1925, Cecil owed it $10,000. The largest loan made him was in 1926 — $90,000 at one time, and in the same year about $18,000 more. By the end of the next year he had repaid $48,000; in 1928 he repaid about $40,000 more, and in the next year petitioner owed him about $72,000.
*1177 We cannot but comment upon the attempt made by petitioner on brief to take much of our time with criticisms of the design and effect of the statutory provisions here involved. Such efforts are wasted. The laws are enacted by the Congress, not by us, and “ arguments as to expediency, or of economic mistake or wrong in taxation ” are here immaterial and have no place. Brushaber v. Union Pacific R. R. Co., 240 U. S. 1. Our sole duty is to see to it that the mandates of the statutes are followed in the cases brought to us for decision. As to petitioner’s contentions respecting the unconstitutionality of the statute, these heretofore have been decided adversely.
Since Cecil and Constance deMille agreed, prior to 1924, that compensation for her personal services should be her separate income, respondent erred in including in Cecil’s income for the years 1924 to 1927, inclusive, the salaries paid Constance by Productions. Howard C. Hickman, 27 B. T. A. 807; affd., 70 Fed. (2d) 985.
Reviewed by the Board.

Judgment will be entered under Rule 50.

 Sec. 220. (a) I£ any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall bo in addition to the tax imposed by section 230 of this title and shall (except as provided in subdivision (d) of this section) be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.
(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.
[Subdivisions (e) and (d) here omitted.]

 French Mortgage & Bond Co., 38 Fed. (2d) 841; United Business Corporation of America, 19 B. T. A. 809 ; affd., 62 Fed. (2d) 754 ; certiorari denied, 290 U. S. 635 ; Tway Coal Sales Co. v. United States, 3 Fed. Supp. 668 ; Williams Investment Co. v. United States, S Fed. Supp. 224 : Keck Investment Co., 29 B. T. A. 143; William C. deMille Productions, Inc., 30 B. T. A. 826 (on review; C. C. A., 9th Cir.).